LIU, J.,
Concurring. — There is much in today’s opinion I agree with. I agree that Sundance v. Municipal Court (1986) 42 Cal.3d 1101 [232 Cal.Rptr. 814, 729 P.2d 80] forecloses petitioner’s due process claim. (Maj. opn., ante, at pp. 1056-1057.) As to petitioner’s separation of powers claim, I agree that “the initiation of criminal proceedings is a core, inherent function of the executive branch” (id. at p. 1053); that Government Code section 100, subdivision (b) makes clear that “all prosecutions shall be conducted in [the] name [of the People of California] and by their authority”; that Penal Code section 684 similarly says “[a] criminal action is prosecuted in the name of the people of the State of California, as a party . . .”; and that “the Legislature did not intend for complaints to issue ‘in the name of’ the clerk” when it enacted Penal Code section 959.1, subdivision (c). (Maj. opn., ante, at p. 1051.)
The problem, however, is that the complaint in this case was issued by a court clerk, an official with no authority to prosecute a criminal action in the name of the People of California. Although the signature of the “DECLARANT AND COMPLAINANT” is hard to make out, the parties agree that the signature belongs to a court clerk. Nowhere on the complaint does there appear the name of a prosecuting official. (The complaint is reprinted at the end of this opinion. The initials “LAPD” appear above a line that says, “LAW ENFORCEMENT AGENCY FILING COMPLAINT,” but that seems to indicate that the Los Angeles Police Department (LAPD) issued the underlying traffic citation. The LAPD is not a prosecutorial entity.)
According to declarations of a senior administrator of the Los Angeles County Superior Court, the court clerk issues approximately 8,000 similar *1059 complaints for failure to appear every week. These complaints are automatically generated from data entered by deputy clerks or their staff. The data identify which cases are delinquent, and every Tuesday night, a computer gathers the data from the prior week and electronically generates thousands of failure-to-appear complaints against the defendants throughout the county. The complaints are also automatically transmitted to the Department of Motor Vehicles and to the countywide warrant system, a database of wanted persons in Los Angeles County. The signature on each complaint is electronically generated, and each complaint is filed as a misdemeanor. When a defendant comes to court for arraignment, the charge is typically reduced to an infraction with the prosecutor’s and the defendant’s mutual consent. But if the defendant does not consent, the case may result in a misdemeanor conviction and jail time, as in this case. Each complaint exposes the defendant to nearly $400 in fines, fees, and penalties. In the 2007-2008 fiscal year, revenue from such complaints exceeded $75 million.
It is rare for this court to hear an appeal in a failure-to-appear case. But, as the numbers suggest, this is one of the most common ways that ordinary citizens come into contact with the criminal justice system. The official process that leads to a misdemeanor complaint is, as far as I can tell, entirely automated after a deputy clerk enters data noting a person’s failure to appear for a traffic citation. At no point does a prosecuting official engage in any review, exercise any discretion, or otherwise have any role. I do not see how this practice can be squared with the principle of separation of powers.
Although the separation of powers doctrine under the California Constitution is not identical to its federal counterpart (see Marine Forests Society v. California Coastal Com. (2005) 36 Cal.4th 1, 28-31 [30 Cal.Rptr.3d 30, 113 P.3d 1062]), the principle throughout American history has reflected the concern that “[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny.” (Madison, The Federalist Papers, No. 47 (Cooke ed. 1961) p. 324; see Parker v. Riley (1941) 18 Cal.2d 83, 89 [113 P.2d 873].) This does “not mean that these departments ought to have no partial agency in, or no controul over, the acts of each other.” (Madison, at p. 325; see Carmel Valley Fire Protection Dist. v. State of California (2001) 25 Cal.4th 287, 297-298 [105 Cal.Rptr.2d 636, 20 P.3d 533].) But it does mean that the core functions of each branch may not be allocated to or usurped by another branch. Thus, for example, “[t]he magistrate in whom the whole executive power resides cannot of himself . . . administer justice in person, though he has the appointment of those who do administer it. The judges can exercise no executive prerogative, though they are shoots from the executive stock . . . .” (Madison, at p. 326, italics added.)
*1060 Separation of powers protects liberty not only by creating checks and balances, but also by maintaining clear lines of political accountability. (“The diffusion of power carries with it a diffusion of accountability.” (Free Enterprise Fund v. Public Company Accounting Oversight Bd. (2010) 561 U.S. 477, 497 [177 L.Ed.2d 706, 130 S.Ct. 3138, 3155].)) When a governmental arrangement blurs the lines of accountability by unduly diminishing the executive’s oversight, it “subverts the [executive’s] ability to ensure that the laws are faithfully executed — as well as the public’s ability to pass judgment on his efforts.” (Ibid.)
This concern is not merely theoretical in the context here. Imagine how things would look if the Los Angeles City Attorney or his designate had to sign his name as the “DECLARANT AND COMPLAINANT” on each of the 8,000 failure-to-appear complaints issued to Los Angeles County residents each week. That’s over 400,000 complaints each year. Given the mass processing of these complaints, it is all but certain that some fraction of the charges will be found erroneous or will otherwise result in dismissal, but not until each defendant has been put to significant hassle or expense. Wouldn’t the prospect of disgruntled citizens on such a scale induce a degree of discretion or oversight before an electorally accountable official is willing to affix his name to a complaint? And even if not, shouldn’t each complaint — as with any other criminal complaint — be issued in a form that entitles the citizenry to judge whether their elected law enforcement officials are setting priorities and allocating resources in an optimal way?
Today’s opinion says this problem of accountability is cured by the fact that a deputy city attorney told the superior court in this case that “ ‘we approve and concur of this complaint as well as all the other complaints that are filed in all the other cases in this courthouse. We know the practice exists where a complaint is generated via a notice to appear in which a person cited in the notice to appear has failed to appear. We have not asked the Court and/or its clerk to stop.’ ” (Maj. opn., ante, at pp. 1049-1050.) Even if I were to agree that a court clerk may sign a complaint as the declarant and complainant so long as the prosecutor approves (id. at p. 1054), I do not believe an unsworn, post hoc statement made in the course of litigation suffices to confer such approval. As every elected official knows, there is often a difference in perception if not reality between deciding to undertake a course of action oneself and simply going along with or not stopping a course of action decided by others. This case might be different if the city attorney had earlier adopted a policy statement that established or expressly approved the current practice. But no such statement appears here.
Although efficiency and good government are laudable objectives, they must be pursued in conformity with our constitutional structure. That structure requires accountability in all governmental functions, including the *1061 prosecutorial function (see Morrison v. Olson (1988) 487 U.S. 654, 697 [101 L.Ed.2d 569, 108 S.Ct. 2597] (dis. opn. of Scalia, J.)), so that the citizenry may hold public officials to answer for error, abuse, or misguided priorities. Whether or not it is realistic to expect the city attorney to review and approve each of the 400,000 failure-to-appear complaints issued every year in Los Angeles County, his decision to charge each defendant with a misdemeanor in the name of the People must be transparent and open to public judgment, not obscured by the signature of a court clerk.
This conclusion does not require invalidating the thousands of judgments under the current scheme that are not yet final today. In virtually all of those cases, even if the participation of a public prosecutor does not cure the separation of powers violation, we may readily conclude that the defendants likely suffered no prejudice. (See Smith v. Rae-Venter Law Group (2002) 29 Cal.4th 345, 372 [127 Cal.Rptr.2d 516, 58 P.3d 367] [nonretroactive application of a judicial decision may be justified by “ ‘[considerations of fairness and public policy,’ ” including “ ‘retroactivity’s effect on the administration of justice’ ”].) But lack of prejudice to individual defendants does not justify use of the present scheme going forward. If the city attorney wants to continue automatically generating these complaints, the separation of powers problem is easily remedied. And if the remedy were to cause the city attorney to hesitate, that would tend to confirm the present need for better alignment between prosecutorial action and accountability.
For the reasons above, I concur only in today’s judgment.
Siggins, J.,* concurred.
*1062 APPENDIX
[[Image here]]

Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.